Filed 9/29/25  P. v. Khatoonian CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br>MICHAEL ALAN KHATOONIAN,<br><br>        Defendant and Appellant. | C100695<br><br>(Super. Ct. No. 17FE010114) |

A jury convicted defendant Michael Alan Khatoonian of several sex offenses committed against a 10-year-old child.  In a bifurcated proceeding, the jury found that defendant had previously been convicted of two strike offenses within the meaning of the three strikes law.  The trial court sentenced defendant to an aggregate determinate prison term of 30 years consecutive to an indeterminate term of 115 years to life.

In a prior appeal, this court affirmed defendant's convictions but vacated his sentence, concluding that the trial court erred by (1) admitting evidence outside the record of conviction to prove one of the prior strike convictions, and (2) staying two counts at sentencing without imposing a sentence on those counts.  This court remanded

the matter for further proceedings and a new sentencing hearing. (*People v. Khatoonian* (Dec. 6, 2022, C091970) [nonpub. opn.] (*Khatoonian*).) On remand, after the People conceded that the second strike conviction had not been proven, the trial court sentenced defendant to a new determinate prison term of 31 years consecutive to an indeterminate term of 60 years to life.

Defendant now contends (1) the trial court's finding, as to two aggravating circumstances, that defendant's convictions are of increasing seriousness and that he served a prior prison term, violated Penal Code[1] section 1170 and the Sixth Amendment to the United States Constitution, resulting in prejudice; (2) the trial court's use of defendant's remaining strike conviction to impose upper term sentences amounted to an improper dual use of that conviction; and (3) the trial court abused its discretion when it declined to dismiss the serious felony enhancements.

Given the California Supreme Court's recent decision in *People v. Wiley* (2025) 17 Cal.5th 1069 (*Wiley*), we conclude the trial court violated section 1170 and the Sixth Amendment by finding that defendant had served a prior prison term and that his convictions are of increasing seriousness. We also conclude the error was not harmless beyond a reasonable doubt. Accordingly, we will vacate defendant's sentence, remand the matter for a full resentencing, and otherwise affirm the judgment. Because there will be a full resentencing, we do not address defendant's remaining contentions.

## BACKGROUND

The victim, who was 10 years old, accompanied her mother on a date with defendant. At defendant's house, while sitting between the child and her mother on his couch watching a movie, defendant reached into the child's pants and forcibly penetrated

---

[1] Undesignated statutory references are to the Penal Code.

her vagina. Later, the child was sitting in a chair when her mother went to the bathroom; defendant again forcibly penetrated her vagina.

Defendant absconded during trial and the trial court finished the trial in his absence. The jury found defendant guilty on two counts of sexual penetration of a child 10 years of age or younger (counts 1 and 5), two counts of forcible lewd or lascivious conduct with a child under 14 years of age (counts 2 and 6), and one count of lewd or lascivious conduct with a child under 14 years of age (count 4). The jury also found that defendant had previously been convicted of two strike offenses. Those prior strikes were a 2006 conviction for arson of an inhabited structure and a 2000 conviction for battery causing serious bodily injury. The latter conviction is only a strike if defendant personally caused great bodily injury to someone other than an accomplice. (§§ 667.5, subd. (c)(8); 1192.7, subd. (c)(8).) The jury so found.

Officials located defendant and returned him for sentencing. The trial court sentenced defendant to an aggregate determinate prison term of 30 years consecutive to an indeterminate term of 115 years to life. On appeal from that judgment, this court concluded that the trial court erred by admitting evidence outside the record of conviction to prove that the prior battery conviction was a strike. In addition, this court concluded the trial court erred by staying counts 2 and 6 without imposing a sentence on those counts. This court vacated defendant's sentence and remanded the matter for further proceedings and a new sentencing hearing to be conducted in accordance with various recently amended sentencing laws. (*Khatoonian, supra*, C091970.)

On remand, defendant submitted a new sentencing memorandum asking the trial court to dismiss the remaining strike offense, dismiss the serious felony enhancements, and sentence him to a determinate prison term of either 16 or 22 years, depending on which offense it designated as the principal term. The People also submitted a new sentencing memorandum asking the trial court to reimpose the original sentence. The People argued the record of conviction demonstrated that the battery offense was a strike.

3

But if the trial court disagreed with that position, the People argued for an aggregate determinate term of 31 years consecutive to an indeterminate term of 60 years to life. The determinate portion of that requested sentence was based, in part, on imposing an upper term sentence of eight years for count 4, doubled to 16 years for the prior strike.[2] In support of their request to impose the upper term, the People acknowledged that newly-amended section 1170, subdivision (b)(2) limited the trial court's ability to exceed the middle term, but argued the trial court could impose an upper term sentence based on, among other things, "defendant's other convictions that are not the basis of his enhancements."

After a hearing addressing the validity of the jury's strike finding based on the battery conviction, the prosecutor ultimately conceded that the strike had not been proved. Turning to sentencing, the prosecutor reiterated the People's position that defendant should be sentenced to a term of 31 years plus 60 years to life. In response, defense counsel reiterated defendant's request to dismiss the remaining strike conviction, dismiss the serious felony enhancements, and sentence defendant to a middle-term determinate sentence. With respect to the People's request to impose an upper term sentence, defense counsel argued "the only way that you can get to an upper term is based on the fact of a prior conviction proven by a certified record of conviction." Defense counsel conceded defendant's arson and battery convictions were so proven, but argued no other convictions could be used to impose an upper term. In response to the trial court's suggestion that it could impose an upper term based on defendant having "served a prior prison term" and "that his crimes are [of] increasing seriousness," defense counsel objected "to anything other than [the] fact of the prior conviction[s] being used as an

---

[2] The People also requested upper term sentences for counts 2 and 6, to be stayed under section 654.

aggravating factor," arguing that the trial court could not additionally find that defendant served a prior prison term or that his crimes were of increasing seriousness.

The trial court denied defendant's request to dismiss the prior strike conviction. It noted defendant's significant criminal history, including the arson, which the trial court described as "a road rage-type incident and he ended up following the guy to his house and trying to burn his house down, which is pretty horrendous, factually." With respect to the assault, the trial court stated that defendant "engaged in choking of the person he was in a dating relationship with." The trial court also noted that defendant was convicted of driving under the influence (DUI) and fleeing a pursuing officer the following year. Then, within two years of being paroled, defendant "already re-offended with this current case, which was, really, no other way to put it other than a deplorable act with a young child." The trial court described it as predatorial. Pointing out that defendant had absconded during the underlying trial, the trial court stated: "So he has a pretty . . . horrendous life of criminality up to the point of sentencing." The trial court added, "He's . . . engaged in horrible crimes. His Static-99 [risk assessment] that was done at this time has him at a medium to high risk of re-offense." The trial court concluded that defendant was within the spirit of the three strikes law for the purposes of increasing his sentence because of the strike.

The trial court also declined to dismiss the serious felony enhancements, saying it had given great weight to the mitigating factors set forth in section 1385, subdivision (c)(2), but ultimately concluded that dismissal would not be in the interest of justice. The trial court also determined that dismissal of the enhancements would endanger public safety, explaining: "I think the defendant is clearly a predator and would do this again, especially when you look at his [risk assessment], where they say he's a medium to high risk, and nothing in his life or background would suggest that he'd be anything other than a danger to public safety. So I think if he were to get out, I think

5

there's a likelihood that others would be in serious danger, based on his level of dangerousness."

In support of the imposition of an upper term sentence, the trial court found beyond a reasonable doubt that defendant had served a prior prison term and that his crimes are of increasing seriousness. As to the latter finding, the trial court explained: "[A]lthough I don't think the [flight from a pursuing officer] and the DUI can be considered of increasing seriousness, we go from [the battery and arson convictions] where he served a prison term, to the [present sex offenses], which really show a clear pattern to the Court that . . . his crimes are of an increasing seriousness." The trial court concluded: "Based on these aggravating circumstances, I do find that the aggravating circumstances far outweigh any mitigating circumstances in this case."

Defense counsel objected to the trial court using any convictions other than the arson and battery convictions to impose an upper term. Defense counsel also objected to the trial court imposing an upper term based on defendant's criminal history because that history was used to double his sentence under the three strikes law and to impose the serious felony enhancements.

The trial court ultimately imposed a determinate prison term of 31 years consecutive to an indeterminate term of 60 years to life. The sentence consisted of the following: an indeterminate term of 30 years to life (15 years to life, doubled) on counts 1 and 5; a determinate term of 16 years (the upper term of eight years, doubled) on count 4; plus 15 years (5 years per count) for the serious felony enhancements. The trial court also imposed upper term sentences on counts 2 and 6, but stayed them pursuant to section 654. The trial court said it was imposing "the maximum possible sentence . . . because of all the reasons that we've already talked about."

6

DISCUSSION

Defendant contends the trial court's findings that his convictions are of increasing seriousness, and that he served a prior prison term, violated section 1170 and the Sixth Amendment, resulting in prejudice.

A

As of January 1, 2022, the Legislature amended section 1170 to provide: "When a judgment of imprisonment is to be imposed and the statute specifies three possible terms, the court shall, in its sound discretion, order imposition of a sentence not to exceed the middle term, except as otherwise provided in paragraph (2)." (§ 1170, subd. (b)(1); Stats. 2021, ch. 719, § 2.) Paragraph (2) provides in relevant part: "The court may impose a sentence exceeding the middle term only where there are circumstances in aggravation of the crime that justify the imposition of a term of imprisonment exceeding the middle term and the facts underlying those circumstances have been stipulated to by the defendant or have been found true beyond a reasonable doubt at trial by the jury or by the judge in a court trial." (§ 1170, subd. (b)(2).) Paragraph (3) goes on to provide, in relevant part: "Notwithstanding paragraphs (1) and (2), the court may consider the defendant's prior convictions in determining sentencing based on a certified record of conviction without submitting the prior convictions to a jury." (§ 1170, subd. (b)(3).)

Under these statutory provisions, except for the trial court's ability to consider prior convictions based on a certified record of conviction, the facts underlying any aggravating circumstance used to justify an upper term sentence must be found true beyond a reasonable doubt by a jury, unless the defendant stipulates to those facts or waives a jury trial and opts for a court trial, in which case the facts must be found true beyond a reasonable doubt by the judge. (*People v. Lynch* (2024) 16 Cal.5th 730, 760 (*Lynch*) ["Absent stipulation or waiver, that factfinding role now resides solely with the jury."].)

7

This statutory jury trial right is coextensive with the federal constitutional right to jury trial articulated by the United States Supreme Court. Other than the fact of a prior conviction, "any fact that exposes a defendant to a greater potential sentence must be found by a jury, not a judge, and established beyond a reasonable doubt, not merely by a preponderance of the evidence." (*Cunningham v. California* (2007) 549 U.S. 270, 281 [166 L.Ed.2d 856]; see *Wiley, supra*, 17 Cal.5th at p. 1078 ["this jury trial right is not merely a state law entitlement, but is constitutionally required for all aggravating facts, other than a prior conviction, relied upon to justify an upper term sentence"]; see also *Lynch*, *supra*, 16 Cal.5th at p. 760.) "The exception to the jury trial right for 'the fact of a prior conviction' has long been recognized in the high court's precedent," beginning with *Almendarez-Torres v. United States* (1998) 523 U.S. 224 [140 L.Ed.2d 350] (*Almendarez-Torres*). (*Wiley,* at p. 1079.) Section 1170, subdivision (b)(3)'s codification of that exception is also "coextensive with high court dictates" regarding the scope of that exception. (*Wiley,* at p. 1086.)

Here, the trial court found two aggravating circumstances to be true without submitting them to a jury: (1) defendant's prior convictions are of increasing seriousness; and (2) defendant served a prior term in prison. (See Cal. Rules of Court, rule 4.421(b)(2), (3).) At the time that it did so, two decisions from the California Supreme Court allowed it to make those findings without running afoul of the federal constitutional right to jury trial. (See *People v. Towne* (2008) 44 Cal.4th 63, 79 (*Towne*) ["the federal constitutional right to a jury trial . . . on aggravating circumstances does not extend to the circumstance that a defendant . . . has served a prior prison term"]; *People v. Black* (2007) 41 Cal.4th 799, 819-820 (*Black*) [the *Almendarez-Torres* exception applies not only to "the fact that a prior conviction occurred, but also other related issues that may be determined by examining the records of the prior convictions," such as "whether those convictions are 'numerous or of increasing seriousness' "].)

8

However, in *Erlinger v. United States* (2024) 602 U.S. 821 [219 L.Ed.2d 451] (*Erlinger*), the United States Supreme Court held that the *Almendarez-Torres* exception allows "judges to find only 'the fact of a prior conviction.' [Citation.] Under that exception, a judge may 'do no more, consistent with the Sixth Amendment, than determine what crime, with what elements, the defendant was convicted of.' [Citation.]" (*Id*. at p. 838.) There, the district court sentenced the defendant under a federal statute that increased his sentence from "up to 10 years" to "a minimum of 15 years and a maximum of life" based on a finding that the defendant had three prior convictions for violent felonies or serious drug offenses committed on different occasions. (*Id*. at p. 825.) Rather than submit that determination to a jury, the district court found for itself that the defendant's qualifying prior offenses were committed on different occasions. (*Id*. at pp. 826-827.) The high court concluded that "the district court had to do more than identify [the defendant's] previous convictions and the legal elements required to sustain them. It had to find that those offenses occurred on at least three separate occasions. And, in doing so, the court did more than *Almendarez-Torres* allows." (*Id*. at pp. 838-839.)

In *Wiley*, the California Supreme Court concluded that the reasoning in *Erlinger* required it to overturn its prior decisions in *Towne* and *Black*. (*Wiley, supra*, 17 Cal.5th at p. 1084.) The trial court in *Wiley* had imposed an upper term sentence based on two aggravating circumstances found true by the trial court: that the convictions were of increasing seriousness, and the defendant had performed poorly on probation. (*Id*. at p. 1077.) The California Supreme Court held that the aggravating circumstance findings violated section 1170 and the defendant's federal constitutional right to have a jury determine any fact that exposed him to greater punishment. With respect to the trial court's finding that his convictions were of increasing seriousness, the court explained: "Under current case law, the determination that a defendant's prior convictions are of increasing seriousness may be made by 'reference to the range of punishment provided

9

by statute for each offense.' [Citation.] Or it may be determined by 'a comparison of the offenses' respective elements.' [Citation.] By either measure, the inquiry requires a comparison and evaluation of the relationship among a defendant's prior convictions, and a determination as to their relative seriousness. As a result, it involves something more than a narrow factual finding that the convictions were sustained and what elements were required to prove them. *Erlinger* makes clear that, under its interpretation of the Sixth Amendment, that narrow finding is as much, and all, the *Almendarez-Torres* exception allows." (*Id.* at pp. 1082-1083, fn. omitted.) Just as the finding at issue in *Erlinger* implicated the jury trial right because it required a qualitative assessment of the offenses, the court concluded "a similar conclusion follows here with respect to the factual finding that a defendant's offenses are increasing in seriousness." (*Id.* at p. 1083.)

Although authorized at the time, *Wiley* now establishes that the trial court's aggravating circumstance findings violated section 1170 and the federal constitutional right to jury trial. The finding that defendant's prior convictions are of increasing seriousness required a comparative assessment. And although the trial court's separate finding that defendant had served a prior prison term does not involve the same kind of assessment, it nevertheless required the trial court to "do more than identify [defendant's] previous convictions and the legal elements required to sustain them." (*Erlinger, supra*, 602 U.S. at p. 838.) As the California Supreme Court made clear in *Wiley*, "a defendant is entitled to a jury trial on all aggravating facts, other than the bare fact of a prior conviction and its elements, that expose the defendant to imposition of a sentence more serious than the statutorily provided midterm." (*Wiley, supra*, 17 Cal.5th at p. 1086, fn. omitted.)

B

Turning to the question of prejudice, "[w]hen a defendant is deprived of a jury trial on aggravating facts used to justify imposition of an upper term sentence, the reviewing

10

court must apply the *Chapman* standard of review.[3] [Citations.] Under that standard, 'a sentence imposed under . . . section 1170[, subdivision ](b) must be reversed and remanded unless the reviewing court concludes beyond a reasonable doubt that a jury, applying that same standard, would have found true all of the aggravating facts upon which the court relied to conclude the upper term was justified, or that those facts were otherwise proved true in compliance with the current statute.' [Citations.] Lack of a jury trial is not harmless under *Chapman* if 'the record contains evidence that could rationally lead to a contrary finding' with respect to the aggravating fact at issue. [Citations.]" (*Wiley, supra*, 17 Cal.5th at p. 1087; see *Lynch, supra*, 16 Cal.5th at p. 768.)

In *Wiley*, the court concluded the failure to afford the defendant a jury trial on whether his prior convictions were of increasing seriousness was prejudicial under the *Chapman* standard. (*Wiley, supra*, 17 Cal.5th at p. 1087.) After setting forth the defendant's extensive rap sheet, the court acknowledged that it "may be" true, as the People argued, "that the progression of [the defendant's] offenses over time from misdemeanors to felonies demonstrates a clear trend from less serious offenses towards more serious ones." (*Id*. at p. 1089.) However, the court concluded, "a rational juror may not have been persuaded beyond a reasonable doubt by that fact alone. Given that [the defendant's] criminal record began as a young adult and spanned two decades, we cannot discount the possibility that, in making the determination as to increasing seriousness, a rational juror could have either placed greater emphasis on his felony offenses, or on his more recent criminal history." (*Ibid*.) With respect to the felony offenses, the court explained that "none is strikingly more serious than the others, either by reference to the nature of the offense or the punishment" and concluded:

---

**3** *Chapman v. California* (1967) 386 U.S. 18 [17 L.Ed.2d 705].

11

"A jury . . . could have disagreed as to whether [these offenses] demonstrated criminal conduct of increasing seriousness." (*Ibid*.)

Finally, the court rejected the People's argument that the defendant's most recent offense, making a criminal threat, "was his most serious offense . . . because it is classified as a serious felony," and that this classification should outweigh the fact that a previous conviction for transporting a controlled substance had "a longer sentencing potential." (*Wiley, supra*, 17 Cal.5th at pp. 1089-1090.) The court explained that "the designation of an offense as a serious felony is . . . simply one factor the jury could have considered when evaluating whether [the defendant's] crimes were of increasing seriousness" and concluded: "These realities make it ' " 'difficult for a reviewing court to conclude with confidence that, had the issue been submitted to the jury, the jury would have assessed the facts in the same manner as did the trial court.' " ' [Citation.]" (*Id*. at p. 1090.) Thus, although "the evidence may have been sufficient to support a finding of increasing seriousness," reversal was required because "[a] rational juror could have reached the opposite conclusion." (*Ibid*.)

Here, defendant has the following felony convictions: (1) battery causing serious bodily injury in violation of section 243, subdivision (d), committed in 2000; (2) arson of an inhabited structure in violation of section 451, subdivision (b), committed in 2001; and (3) the current offenses, committed in 2017: two counts of sexual penetration of a child 10 years of age or younger in violation of section 288.7, subdivision (b); two counts of forcible lewd or lascivious conduct with a child under 14 years of age, in violation of section 288, subdivision (b)(1); and one count of lewd or lascivious conduct with a child under 14 years of age, in violation of section 288, subdivision (a).

The first of the offenses, battery causing serious bodily injury, has the following elements: "(1) a person used physical force or violence against another person; (2) the use of force or violence was willful and unlawful; and (3) the use of force or violence inflicted serious bodily injury on the other person." (*People v. Lewis* (2004) 120

12

Cal.App.4th 882, 887.) The offense "is punishable by imprisonment in a county jail not exceeding one year or imprisonment pursuant to subdivision (h) of Section 1170 for two, three, or four years." (§ 243, subd. (d).)

The second offense, arson of an inhabited structure, has the following elements: (1) a person set fire to, burned, caused to be burned, or aided, counseled, or procured the burning of a structure; (2) the fire was willfully and maliciously set; and (3) the structure was inhabited at the time the fire was set. (§ 451, subd. (b); *People v. Buckner* (2023) 97 Cal.App.5th 724, 728.) The offense "is a felony punishable by imprisonment in the state prison for three, five, or eight years." (§ 451, subd. (b).)

As for defendant's current offenses, the violation of section 288.7, subdivision (b) required proof that: (1) defendant was 18 years of age or older; (2) he caused the penetration, however slight, of the victim's genital opening by any foreign object; (3) he did so for the purpose of sexual arousal, gratification, or abuse; (4) the act was accomplished against the victim's will by force or other means of coercion; and (5) the victim was 10 years of age or younger. (§§ 288.7, subd. (b), 289, subds. (a), (k)(1).) The offense "shall be punished by imprisonment in the state prison for a term of 15 years to life." (§ 288.7, subd. (b).) Defendant's violations of section 288, subdivision (b)(1) required proof that: (1) defendant touched the body of a child who was under the age of 14 years; (2) he did so for the purpose of sexual arousal or gratification; and (3) the act was accomplished by force or other means of coercion. (§ 288, subds. (a), (b)(1); *People v. Martinez* (1995) 11 Cal.4th 434, 443-444.) The offense "shall be punished by imprisonment in the state prison for 5, 8, or 10 years." (§ 288, subd. (b)(1).) Defendant was also convicted of one non-forcible lewd conduct count, punishable "by imprisonment in the state prison for three, six, or eight years." (§ 288, subd. (a).)

As in *Wiley*, we decline to conclude, beyond a reasonable doubt, that any rational juror would have come to the same conclusion as the trial court with respect to whether defendant's convictions are of increasing seriousness. In making such a determination,

we understand the applicable caselaw to permit a jury to evaluate the relative seriousness of prior offenses from aspects of the record, in addition to the respective ranges of punishment. (*Wiley, supra*, 17 Cal.5th at p. 1082, fn. 6; *People v. Quiles* (2009) 177 Cal.App.4th 612, 622; *Black, supra*, 41 Cal.4th 799.) A jury might consider any relevant and admissible evidence bearing on the question of increasing seriousness.

A jury could find support for a determination that the offenses are of increasing seriousness. For example, the violation of section 288.7, subdivision (b) carries a much longer potential sentence than the arson, which in turn has a longer potential sentence than the battery. Moreover, with respect to the nature of the current offenses compared to the prior arson and battery, the Legislature has indicated that sex crimes committed against children are some of " ' "the most serious and heinous" ' " offenses that can be committed. (*People v. Williams* (2024) 17 Cal.5th 99, 120; see *People v. Zandrino* (2002) 100 Cal.App.4th 74, 81.)

Nevertheless, in comparing the elements of arson of an inhabited structure with the elements of battery causing serious bodily injury, a jury might conclude that whether the arson is more serious than the battery depends in part on how the offenses were committed. For example, " '[s]erious bodily injury' means a serious impairment of physical condition," the gravity of which may range from "loss of consciousness" to "serious disfigurement." (§ 243, subd. (f)(4).) If an arson of an inhabited structure resulted in minor damage and no injuries, but a battery causing serious bodily injury resulted in serious disfigurement, a jury might conclude the battery was more serious than the arson notwithstanding the potential punishment. The record in this case is sparse as to how defendant committed the prior offenses.

We decline to conclude beyond a reasonable doubt that a jury would have found that defendant's convictions are of increasing seriousness. Accordingly, the lack of a jury trial as to that aggravating circumstance is not harmless and reversal is required. (See *Wiley, supra*, 17 Cal.5th at p. 1087; *Lynch, supra*, 16 Cal.5th at p. 768.) This conclusion

14

makes it unnecessary to determine whether any rational juror would have come to the same conclusion as the trial court with respect to whether defendant served a prior prison term, and we express no opinion on that matter. And because there will be a full resentencing, we do not address defendant's remaining contentions.

DISPOSITION

Defendant's sentence is vacated and the matter is remanded for a full resentencing. The judgment is otherwise affirmed.


_____/S/_____
MAURO, Acting P. J.


We concur:


_____/S/_____
BOULWARE EURIE, J.


_____/S/_____
FEINBERG, J.